**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

CROCS, INC., a Delaware corporation; and
JIBBITZ, LLC, a Colorado limited liability company;

Plaintiffs,

v.

TAN AT THE BEACH TANNING SALON, INC., an Alabama corporation,
COLIN WELLS, an individual, and
DANE LASTER, an individual,

Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiffs Crocs, Inc. and Jibbitz, LLC (collectively "Plaintiffs"), for their Complaint against Defendants Tan at the Beach Tanning Salon, Inc., Colin Wells, and Dane Laster, state as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Crocs, Inc. ("Crocs") is a Delaware corporation having its principal place of business at 6328 Monarch Park Place, Niwot, Colorado 80503.

2.      Plaintiff Jibbitz, LLC ("Jibbitz") is a Colorado limited liability company having its principal place of business at 3125 Sterling Circle, Boulder, Colorado 80301.

3.      Defendant Tan at the Beach Tanning Salon, Inc. ("Tan at the Beach") is an Alabama corporation having its principal place of business in Sulligent, Alabama.

4.     Defendant Colin Wells ("Wells") is an individual who, upon information and belief, resides in the State of Alabama.

5.     Defendant Dane Laster ("Laster") is an individual who, upon information and belief, resides in the State of Indiana.

6.     The Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b).  This case presents well-pleaded federal questions arising under the Patent Act , 35 U.S.C. §§ 1, et seq., the Lanham Act, 15 U.S.C. §§ 1051, et seq., and the Copyright Act, 17 U.S.C. §§ 101, et seq.  Supplemental jurisdiction exists over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

7.     The exercise of *in personam* jurisdiction over Defendants comports with the laws of the State of Colorado and the constitutional requirements of due process because Defendants and/or their agents transact business and/or offer to transact business within Colorado.

8.     Specifically, Defendant Tan at the Beach, acting through Defendant Wells and via the online stores located at *http://stores.eBay.com/Tan-At-The-Beach-Inc* and *http://www.tanatthebeachinc.com*, advertises, offers for sale, sells, and distributes foam clog footwear and accessories for foam clog footwear, throughout the United States, including within the State of Colorado.  Defendant Laster, through the website *http://www.crocsshoes.com*, advertises, offers for sale, sells, and distributes foam clog footwear and accessories for foam clog footwear, throughout the United States, including within the State of Colorado.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (d) and 28 U.S.C. § 1400(b), as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District.

## **GENERAL ALLEGATIONS**

## **CROCS, INC.**

10.     Crocs is a rapidly growing designer, manufacturer and marketer of Crocs™-
branded footwear for men, women and children, which incorporate Crocs' proprietary closed-
cell resin material, Croslite™ – a substantial innovation in footwear comfort and functionality.
This proprietary material enables Crocs to produce soft and lightweight, non-marking, slip and
odorresistant shoes, which are ideal for casual wear and recreational uses such as boating,
hiking, fishing and gardening.  Currently, Crocs offers a substantial number of models in a wide
variety of colors.  Crocs is constantly growing the number of new models offered.

11.     Crocs was formed in July 2002, when its founders decided to market an
innovative shoe.  In November 2002, Crocs introduced its first model, originally intended as a
boating or outdoor shoe; however, by 2003, Crocs™ brand footwear were universally accepted
as all purpose footwear for comfort and fashion.  In 2003-2004, Crocs expanded its product line,
acquired Foam Creations, its Canadian manufacturer, and began speedy assembly and delivery.

12.     Crocs™ footwear is sold through a wide range of distribution channels, including
department stores, specialty footwear stores, sporting good and outdoor retailers.  Crocs™ brand
footwear are also sold through a variety of specialty channels, including gift shops, uniform
suppliers, independent bicycle dealers, specialty food retailers, and health and beauty stores.
Crocs distributes its products through over 6,500 store locations domestically and in over 40
countries worldwide.  In addition, Crocs sells its footwear through its websites, including but not
limited to, www.crocs.com and www.crocsrx.com, and in kiosks in shopping malls throughout
the country.  In the past three years, Crocs' sales have increased dramatically: Crocs recorded

$1.2 million in revenues in 2003, which has grown to more than $355 million in revenues in 2006 from sales of its footwear worldwide.

13.     Crocs designs, manufactures, distributes, and sells its footwear under the CROCS trademark, and is the owner of the CROCS trademark ("the CROCS Mark").  Examples of these shoes are shown on the Crocs web site at http://www.crocs.com.  Crocs has invested heavily in developing its trademark and its distinctive shoe designs, and in doing so, has acquired substantial trademark rights in connection with a wide variety of good and services, including footwear, clothing, and advertising and business, including retail stores.

14.     On February 7, 2006, the U.S. Patent and Trademark Office issued U.S. Patent No. 6,993,858 B2, entitled "Breathable Footwear Pieces," with Crocs as the assignee.  A true and correct copy of the '858 Patent is attached hereto as **Exhibit A**.

15.     The '858 Patent claims various footwear pieces.  The claimed invention consists of comfortable footwear that is compatible with various work environments, such as a hospital setting, which may require secure and waterproof footwear.  In some cases, the footwear pieces are molded from a lofted material.  In some embodiments, the shoes also include liquid conductors formed around ventilators or openings that disperse liquids away from the individual's feet.  The '858 Patent discloses several embodiments of the claimed invention, including models that contain liquid conductors on the upper portion of the base section, and others that include a solid base section to protect the feet from direct contact with spilled liquids, for example.  Other embodiments include models with an adjustable strap and/or open-toe.

16.     On March 28, 2006, the U.S. Patent and Trademark Office issued U.S. Patent No. D 517,789, entitled "Footwear," with Crocs as the assignee.  A true and correct copy of the '789 Patent attached hereto as **Exhibit B**.

17.     The '789 Patent claims an ornamental design for footwear as shown and described in the following figures:



18.     Crocs' footwear, accessories, displays and associated marketing and sales materials share an overall unique look and feel that serves to identify Crocs as their point of origin.   Accordingly, the "Crocs Trade Dress" consists of the image and overall appearance of Crocs-brand footwear.  In particular, Crocs™ shoes are typically characterized as colorful foam

clogs with a sporty European design.  They have a distinctively quirky clog-like appearance, which could also be characterized as friendly, vibrant, fun and bubbly.  The distinctively gentle slope of the upper gives the shoe a unique, recognizable outline.

19.    In addition to its overall look and feel, the Crocs Trade Dress also includes one or more of the following specific elements:

(a)    A decorative strip or band along the upper opening perimeter, which may include a scallop pattern and/or raised bumps;

(b)    A strip along the vertical portion of the upper running between the points of attachment of the strap, the strip running along the forefoot and toe regions;

(c)    A lower strip paralleling the upper strip and separated from it by a line, the lower strip circumnavigating the entire shoe and gently rising toward the heel;

(d)    A distinctive tread pattern;

(e)    A distinctive pattern of holes on the horizontal portion of the upper;

(f)    A distinctive pattern of holes on the vertical portion of the upper;

(g)    A pattern of raised nubs in the footbed;

(h)    Characteristic black or black and white strap connectors;

(i)    A distinctive one-color design; and

(j)    A distinctive tread on the bottom of the shoe.

20.    The Crocs Trade Dress is non-functional and serves to distinguish Crocs' shoes from competitive products.  The Crocs Trade Dress is ornamental and has no utilitarian advantage.  Furthermore, the virtually infinite number of different footwear styles in existence

today and throughout the past, evidence the unique nature of the Crocs Trade Dress and demonstrate that other styles are available to competing footwear manufacturers.

21.     Crocs intentionally created its trade dress to distinguish its footwear from any other footwear and to indicate Crocs as its sole point of origin.  In fact, the Crocs Trade Dress plays a central role in Crocs' business strategy; its prospectus affirmatively states that "[w]e seek to differentiate the crocs brand and our product offerings by focusing on several core strategies. Our principal strategies are to: [1] *Continue to highlight the unique characteristics of* **crocs** *footwear. . . .*  [W]e believe our fun styles are an important element of our products and our brand image."  On information and belief, no other manufacturer had used the Crocs Trade Dress prior to its introduction into and success in the market by Crocs.

22.     As mentioned above, Crocs sells its footwear through a wide range of distribution channels, including specialty stores such as Barnes & Noble, sporting good and outdoor retailers such as REI, department stores such as Dillard's, Nordstrom and e-tail and catalog sources. Crocs™ brand footwear are also sold through a variety of specialty channels, including gift shops, uniform suppliers, independent bicycle dealers, specialty food retailers, and health and beauty stores.  Crocs distributes its products through over 6,500 store locations domestically, and in over 40 countries worldwide.  In addition, Crocs sells its footwear through its website and in kiosks in shopping malls throughout the United States.  Crocs' sales and marketing efforts center around the presentation of its footwear products whose unique appearance showcases the Crocs™ brand and Crocs Trade Dress.

23.     Last year alone Crocs sold approximately 20 million pairs of footwear amounting to $355 million in sales worldwide.  Crocs also spent nearly $6 million on promoting the Crocs

Trade Dress and on total marketing.  This dramatic increase over previous years evidences the popularity and appeal enjoyed by Crocs' footwear.

24.     Crocs has been recognized as "Brand of the Year" by *Footwear News*, a leading industry publication.  Crocs was also awarded the 2005 "Item of the Year" by *Footwear Plus* magazine, which called Crocs™ brand footwear the "'It' item of 2005."  Also in 2005, Crocs won the "IQ Award" from the Boulder County Business Report, which seeks truly innovative products.

25.     Due to the inherent distinctiveness of the Crocs Trade Dress, as well as the extensive sales, advertising and promotion making use of it, Crocs™ footwear has become well known throughout the United States as originating from Crocs.

26.     The widespread and unauthorized imitation of the Crocs Trade Dress by the Defendants in order to trade on Crocs' goodwill and success, as well as the resulting high volume of infringing sales, are also strong evidence that the Crocs Trade Dress has acquired secondary meaning.

## JIBBITZ, LLC

27.     Founded in 2005 as a family business by a stay-at-home mom, her husband and their children, Jibbitz pioneered and popularized a unique accessory brand comprising colorful snap-on products specifically suited for closed-cell resin footwear such as Crocs shoes.  Today, more than 400 Jibbitz designs are available to consumers for personalizing and customizing their Crocs footwear and for other uses.  *See* www.jibbitz.com.  The Jibbitz products are commonly known as "shoe charms."  A photo of Jibbitz shoe charms on Crocs clogs (and their owners) is shown below:



28.     Jibbitz develops creative and original designs for its footwear accessories.  Jibbitz owns all right, title and interest in its shoe charm designs, including all copyright rights therein.  Jibbitz has obtained numerous copyright registrations for its footwear accessories.  A true and correct copy of examples of those copyrights is attached hereto as **Exhibit C** (the Jibbitz "Copyrighted Works").

29.     Jibbitz has an ongoing copyright registration program with the United States Customs service regarding the Copyrighted Works.  Jibbitz has presented and presents, and has spent a significant amount of money developing, the Copyrighted Works and they are assets of immense value to Jibbitz.

30.     Jibbitz owns three federal trademark registrations covering the mark JIBBITZ for: Small decorative objects made of rubber, plastic, paste, glass, non-precious stones or nonprecious metal, namely, shoe ornaments, buttons for clothing, snap fasteners, slide fasteners, and zipper fasteners:

(i).     JIBBITZ                      Reg. No. 3,180,450  Date: September 19, 2006

(ii).    JIBBITZ (w/color design)     Reg. No. 3,183,380  Date: December 12, 2006



(iii).    JIBBITZ (with b/w design)    Reg. No. 3,183,379  Date: December 12, 2006



These registrations are valid, subsisting and owned by Jibbitz (the "Jibbitz Marks").  A true and correct copy of the registrations is attached hereto as **Exhibit D**.

31.    The Jibbitz Marks are strong trademarks that are distinctive and source identifying for shoe charms and other products offered by Jibbitz.  The aforementioned registrations give Jibbitz the presumption of exclusive trademark rights, validity, prior use and ownership of the Jibbitz Marks.  The Jibbitz Marks consequently embody the valuable goodwill and reputation Jibbitz has earned in the marketplace.

32.    Jibbitz shoe accessories are sold at over 3000 U.S. retailers.  Jibbitz and its products have been featured in numerous media, including: CBS Saturday Early Show, The Wall Street Journal, Business 2.0, Westword, The Denver Business Journal, FOX 31 News (Denver) and 9 News (NBC -- Denver).  In addition, in January, 2007 the Oprah Winfrey Show filmed a segment that featured Jibbitz, its products and its founders.  Jibbitz is an official licensee of the Walt Disney Company.

33.    In December, 2006, Crocs acquired Jibbitz, and Jibbitz is now a wholly-owned subsidiary of Crocs.  Although Crocs' and Jibbitz's sales have increased in recent years, statements and advertising by various Defendants on their websites, online stores, and in search

engines indicate the increasingly successful nature of sales of their infringing products (identified below), as well as the widespread practice of unauthorized trading on the goodwill associated with the Crocs and Jibbitz names.  But for the emergence of the infringing products into the marketplace, Crocs and Jibbitz would have captured a significant number of additional sales in the United States.  If Defendants are permitted to continue their infringing activities as described below, their sales of the infringing products threaten to substantially drive down Crocs' and Jibbitz's sales and sales revenue, the number of infringers will multiply, and Crocs' and Jibbitz's ability to market its product and distinguish their brands will be diminished.

## DEFENDANTS' INFRINGING ACTIVITIES

## TAN AT THE BEACH TANNING SALON, INC. AND COLIN WELLS

34.     On information and belief, Defendant Tan at the Beach manufactures, uses, offers for sale, sells, and/or imports foam clog footwear and accessories for foam clog footwear under the names CROCOS, CROCOS CLOGS, CROCOS SHOES, and CROCO CHARMS, and other foam clog footwear and footwear accessories, throughout the United States, including within the State of Colorado.

35.     On information and belief, Defendant Colin Wells is the President and Owner of Defendant Tan at the Beach, and has otherwise directly participated in the acts described herein.

36.     Defendant Wells operates an online store on the popular online auction site, eBay, located at *http://stores.eBay.com/Tan-At-The-Beach-Inc*., at which foam clog footwear and footwear accessories under the names CROCOS, CROCOS CLOGS, CROCOS SHOES, and CROCO CHARMS are offered for sale and otherwise available for purchase and delivery

throughout the United States, including within the State of Colorado.  A sample of items offered for sale at the Tan at the Beach eBay online store is attached hereto as **Exhibit E**.

37.     In an effort to trade on and otherwise appropriate Crocs' goodwill, Defendant Wells applied for a federal trademark registration for the mark CROCO CHARMS on February 12, 2007 for use in connection with "shoe charms and shoes."

38.     Plaintiffs have repeatedly notified Defendant Wells of his infringing activities, and on April 10, 2007, Plaintiffs sent Defendant Wells a cease-and-desist letter notifying Defendant Wells that his activities violated Plaintiffs' intellectual property rights and demanding that he cease infringing Plaintiffs' intellectual property rights and discontinue all use of the name "CROCO" for any purpose.  A true and correct copy of Plaintiffs' April 10, 2007 letter is attached hereto as **Exhibit F**.

39.     Defendant Wells assured Plaintiffs that he would cease infringing sales and abandon the federal application for CROCO CHARMS.  Notwithstanding this agreement, Defendant Wells continued to sell infringing foam clog footwear under the CROCOS name variations, and has recently opened an additional online store located at *http://www.tanatthebeachinc.com*, at which foam clog footwear and footwear accessories under the names CROCOS, CROCOS CLOGS, CROCOS SHOES, and CROCO CHARMS are offered for sale and otherwise available for purchase and delivery.  A sample of items offered for sale at the Tan at the Beach online store is attached hereto as **Exhibit G.**  Moreover, in yet another attempt to appropriate Crocs' goodwill and dilute the value of the CROCS Mark, Defendant Wells applied for a federal trademark registration on the mark CROCOS SHOES on June 7, 2007 for use in connection with "beach shoes."

40.     On information and belief, Defendant Tan at the Beach purchases and/or imports its foam clog footwear and footwear accessories from manufacturers in China, including, but not limited to Joinworld (China) Industrial & Trading Ltd. and Kevin Su.

41.     On May 1, 2007, Jibbitz obtained a judgment from the United States District Court for the District of Nevada, Case No. 07-cv-00118-RLH-PAL, against Joinworld (China) Industrial & Trading Ltd. and Kevin Su, among other Defendants in the amount of $1,800,000 for willful infringement of the Jibbitz Copyrighted Works.  A true and correct copy of the Judgment is attached hereto as **Exhibit H**.  The Judgment also permanently enjoined Joinworld (China) Industrial & Trading Ltd., Kevin Su, and "all other persons acting, or attempting to act, in concert or participation with them," from "manufacturing, producing, distributing, importing, offering for sale, selling, or using any product bearing any of the [Jibbitz] Copyrighted Works . . . and any of the Jibbitz Marks."  Upon information and belief, despite having notice of the Joinworld Judgment, Defendant Wells has continued to sell foam clog footwear and footwear accessories from Joinworld and Kevin Su.

42.     Defendant Well's importing, exporting and distribution of foam clog footwear and footwear accessories under the CROCOS, CROCOS CLOGS, CROCOS SHOES, and CROCO CHARMS names, and other foam clog footwear and accessories infringe claims 1 and 2 of the '858 Patent, the '789 Patent, the Crocs Trade Dress, the Jibbitz Copyrighted Works, and otherwise constitute unfair competition.  Defendants' use of the CROCOS, CROCOS CLOGS, CROCOS SHOES, CROCO CHARMS and JIBBITZ marks in connection with such infringing foam clog footwear and footwear accessories infringes the CROCS and JIBBITZ Marks, resulting in irreparable harm to Plaintiffs for which Plaintiffs have no adequate remedy at law.

## DANE LASTER

43.     On information and belief, Defendant Dane Laster is the registrant and owner of the Crocos Shoes Web Site, located at *http://www.crocosshoes.com*, and has otherwise directly participated in the acts described herein.

44.     On information and belief, Defendant Laster manufactures, uses, offers for sale, sells, and/or imports foam clog footwear and accessories for foam clog footwear under the CROCOS, CROCOS SHOES, CROCS, SHOE CHARMS FOR MUCKERS and JIBBITZ names, and other foam clog footwear and footwear accessories, throughout the United States, including within the State of Colorado.

45.     Through the Crocos Shoes Web Site, foam clog footwear and accessories for foam clog footwear under the CROCOS, CROCOS SHOES, CROCS, SHOE CHARMS FOR MUCKERS and JIBBITZ names, and other foam clog footwear and footwear accessories are offered for sale and otherwise available for purchase and delivery throughout the United States, including within the State of Colorado.  A sample of items offered for sale on the Crocos Shoes Web Site is attached hereto as **Exhibit I**.

46.     Defendant Laster registered the *crocosshoes.com* domain with a bad faith intent to profit from the CROCS Mark.  Defendant Laster has knowingly and repeatedly used the CROCS and JIBBITZ Marks on the Crocos Web Site to appropriate Plaintiffs' goodwill and mislead the public into thinking that Plaintiffs somehow sponsor or are affiliated with the Crocos Shoes Web Site.  For example, Defendant Laster uses the CROCS Mark *no less than twenty-five times on each page on the Crocos Shoes Web Site*:

>               If you are looking for Crocs shoes, Crocs nursing shoes, wholesale
> crocs shoes, kid crocs shoes, croc shoes, clog crocs nursing shoes,

> crocs beach shoes, crocs women shoes, child crocs shoes, crocs footwear nursing shoes, crocs toddler shoes, crocs islander shoes, crocs cayman shoes, discount crocs shoes, cheap crocs shoes, crocs professional shoes, crocs like shoes, man crocs shoes, crocs shoes for baby, crocs shoes for infant, crocs off road shoes, camouflage crocs shoes or Jibbitz check us out.

47.     Plaintiffs have repeatedly notified Defendant Laster of his infringing activities, and on April 10, 2007, Plaintiffs sent Defendant Laster a cease-and-desist letter notifying Defendant Laster that his activities violated Plaintiffs' intellectual property rights and demanding that he cease infringing Plaintiffs' intellectual property rights and discontinue all use of the name "CROCOS SHOES" for any purpose.  A true and correct copy of Plaintiffs' April 10, 2007 letter is attached hereto as **Exhibit J**.  Defendant Laster has not responded to Plaintiffs' demands.

48.     Defendant Laster's advertisement, marketing, offering for sale, and distribution of foam clog footwear and footwear accessories under the CROCOS, CROCOS SHOES, CROCS, SHOE CHARMS FOR MUCKERS and JIBBITZ names, and other foam clog footwear and accessories infringe claims 1 and 2 of the '858 Patent, the '789 Patent, the Crocs Trade Dress, the Jibbitz Copyrighted Works, and otherwise constitute unfair competition.  Defendant Laster's use of the CROCOS, CROCOS SHOES, CROCS, and JIBBITZ Marks in connection with such foam clog footwear and footwear accessories infringes the CROCS and JIBBITZ Marks, resulting in irreparable harm to Plaintiffs for which Plaintiffs have no adequate remedy at law.

## FIRST CLAIM FOR RELIEF
Copyright Infringement – 17 U.S.C. § 101 et seq.

49.     Plaintiffs hereby incorporate each of the preceding paragraphs as if fully set forth herein.

50.     Defendants infringe the Jibbitz Copyrighted Works; reproduce the Copyrighted Works in copies; prepare derivative works based upon the Jibbitz Copyrighted Works; and distribute and display copies of the Copyrighted Works to the public, thus infringing Jibbitz's exclusive rights in the Jibbitz Copyrighted Works in violation of 15 U.S.C. § 106.

51.     Defendants are not authorized by Jibbitz to use the Jibbitz Copyrighted Works.

52.     Defendants have obtained and/or will obtain sales and revenue as a direct result of their willful infringement of the Jibbitz Copyrighted Works.

53.     The natural and foreseeable result of Defendants' conduct has been and will continue to be to deprive Jibbitz of the benefits of the exclusive right to reproduce the Jibbitz Copyrighted Works in copies; prepare derivative works based upon the Jibbitz Copyrighted Works; and distribute and display copies of the Copyrighted Works to the public; to deprive Jibbitz of goodwill; and to injure Jibbitz's relations with present and prospective customers.

54.     Jibbitz has lost and will continue to lose revenue from the Defendants' unlawful use of its Copyrighted Works as the direct result of Defendants' conduct alleged herein and Defendants' conduct has deprived and will continue to deprive Jibbitz of opportunities for expanding its business and goodwill.

55.     On information and belief, Defendants intend to continue their course of conduct and to wrongfully use, infringe upon, present and otherwise continue to profit from their infringement of the Copyrighted Works.

56.     Defendants' conduct has caused, and, if not enjoined will continue to cause, irreparable harm to Jibbitz.  Jibbitz has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
Federal Trademark Infringement – 15 U.S.C. § 1114

57.     Plaintiffs hereby incorporate each of the preceding paragraphs as if fully set forth herein.

58.     Defendants are not authorized to use the JIBBITZ Marks or any mark confusingly similar or that in any way represents or implies that Defendants and/or Defendants goods are in any way associated with Jibbitz.

59.     Defendants unauthorized use of the JIBBITZ Marks as alleged herein constitutes trademark infringement in violation of 15 U.S.C. § 1114.  Defendants' use of the JIBBITZ Marks is likely to cause, and on information and belief, has actually caused, confusion, mistake, or deception in the market as to the source or origin of Defendants goods, and has falsely suggested that Defendants and/or their goods are sponsored by, connected to, or associated with Jibbitz.

60.     As a direct and proximate result of Defendants knowing, deliberate and willful infringement of the JIBBITZ Marks, Jibbitz has suffered, and will continue to suffer, irreparable injury to its business, reputation, and goodwill, unless and until Defendants actions as alleged herein are permanently enjoined.  Jibbitz has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**
Common Law Trademark Infringement

61.     Plaintiffs hereby incorporate each of the preceding paragraphs as if fully set forth herein.

62.     Crocs was the first to use the CROCS Mark or any marks similar thereto in association with the sale of foam clog footwear.  As a result of the continued sale by Crocs of

-17-

products under the CROCS Mark, the CROCS Mark has become widely known and Crocs has become identified in the public mind as the manufacturer and/or licensor of the products to which the CROCS Mark is applied.

63.     As a result of the experience, care, and service of Crocs in producing and providing Crocs' products, Crocs products have become widely known to have acquired a worldwide reputation for excellence.  Moreover, the CROCS Mark has become associated with Crocs products, and has come to symbolize the reputation for quality and excellence of Crocs' products. As such the CROCS Mark has become inherently distinctive.

64.     The CROCS Mark neither suggests nor describes any ingredient or characteristic of Crocs' goods or services.  As such, the CROCS Mark is arbitrary and therefore distinctive.

65.     Defendants' use of the names CROCOS, CROCOS CLOGS, CROCOS SHOES, and CROCO CHARMS in connection with foam clog footwear and accessories for foam clog footwear is likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, or affiliation of Defendants' services by Crocs.

66.     Defendants are not authorized to use the CROCS Mark or any mark confusingly similar or that in any way represents or implies that Defendants and/or Defendants' goods are in any way associated with Crocs.

67.      Therefore, Defendants' use of the names  CROCOS, CROCOS CLOGS, CROCOS SHOES, and CROCO CHARMS constitutes trademark infringement in violation of Colorado common law.

68.     Crocs has suffered, and will continue to suffer, injury and irreparable harm to its goodwill and reputation unless Defendants are enjoined from their wrongful acts.  Crocs has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
Anticybersquatting – 15 U.S.C. § 1125(d)(1)

69.     Plaintiffs hereby incorporate each of the preceding paragraphs as if fully set forth herein.

70.     Defendant Laster, as registrant of *www.crocosshoes.com*, has registered, trafficked in, and/or used a trademark that was distinctive at the time of registration of the domain name and was identical or confusingly similar to Crocs' CROCS mark, and/or registered, trafficked in, and/or used a famous trademark that was famous at the time of the registration of the domain name and was identical or confusingly similar to or dilutive of that mark.

71.     The actions described herein evidence bad faith intent to profit by Defendant Laster from the registration and/or use of Crocs' distinctive CROCS mark in an Internet domain name.

72.     Crocs is entitled to an order and injunction immediately transferring the domain name *www.crocosshoes.com* to Crocs.

## FIFTH CLAIM FOR RELIEF
Infringement of the '858 Patent – 35 U.S.C. § 1, et seq.

73.     Plaintiffs hereby incorporate each of the preceding paragraphs as if fully set forth herein.

74.     Defendants have manufactured, used, offered for sale, sold, and/or imported, and continue to manufacture, use, offer to sell, and/or foam clog footwear, including but not limited "Crocos" clogs that infringe the claims of the '858 Patent.

75.     As a result of Defendants' infringement of Crocs' rights in the '858 Patent, Crocs has suffered and will continue to suffer damages.

76.     Defendants' infringement of the '858 Patent has been with full knowledge of the '858 Patent and Crocs' rights therein.

77.     Defendants' willful infringement of Crocs' rights in the '858 Patent warrants an award of treble damages under 35 U.S.C. § 284 and makes this an exceptional case warranting an award of Crocs' reasonable attorney's fees and costs under 35 U.S.C. § 285.

78.     As a result of Defendants' continuing infringement of Crocs' rights in the '858 Patent, Crocs is suffering irreparable harm.  If Defendants' infringing conduct is not enjoined, Crocs will continue to suffer irreparable harm, and otherwise has no adequate remedy at law.  As a result, Crocs is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

## SIXTH CLAIM FOR RELIEF
Infringement of the '789 Patent – 35 U.S.C. § 1, et seq.

79.     Plaintiffs hereby incorporate each of the preceding paragraphs as if fully set forth herein.

80.     Defendants have manufactured, used, offered for sale, sold, and/or imported, and continue to manufacture, use, offer to sell, and/or foam clog footwear, including but not limited "Crocos" clogs that infringes the '789 Patent.

81.     As a result of Defendants' infringement of Crocs' rights in the '789 Patent, Crocs has suffered and will continue to suffer damages.

82. Defendants' infringement of the '789 Patent has been with full knowledge of the '789 Patent and Crocs' rights therein.

83. Defendants' willful infringement of Crocs' rights in the '789 Patent warrants an award of treble damages under 35 U.S.C. § 284 and makes this an exceptional case warranting an award of Crocs' reasonable attorney's fees and costs under 35 U.S.C. § 285.

84. As a result of Defendants' continuing infringement of Crocs' rights in the '789 Patent, Crocs is suffering irreparable harm.  If Defendants' infringing conduct is not enjoined, Crocs will continue to suffer irreparable harm, and otherwise has no adequate remedy at law.  As a result, Crocs is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

**<u>SEVENTH CLAIM FOR RELIEF</u>**
Trade Dress Infringement

85. Plaintiffs hereby incorporate each of the preceding paragraphs as if fully set forth herein.

86. Defendants market, import and/or sell footwear that infringes the Crocs Trade Dress, including but not limited to Croco Clogs, Crocos Shoes and other foam clog footwear.

87. Defendants' foam clog footwear, as described above, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such footwear with Crocs Trade Dress, or as to the origin, sponsorship, or approval of Defendants' footwear by Crocs in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

88. On information and belief, Defendants copied the Crocs Trade Dress with the intent to trade on the goodwill developed by Crocs in establishing the Crocs Trade Dress. Defendants' intentional copying is further evidenced by the degree of similarity between the products.  Furthermore, Defendants' intentional copying is further evidenced by its use of

confusingly similar designations (*e.g.*, Crocos Shoes) and Defendants' attempt to sell multiple products from Crocs' products line.

89.     Crocs has not authorized, licensed or otherwise permitted Defendants to use the Crocs Trade Dress.  Therefore, Defendants' unfair acts were committed in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

90.     Because the Defendants' imitation footwear are confusingly similar to the Crocs Trade Dress, they are likely to cause consumer confusion.  Such consumer confusion has threatened and caused, and will continue to threaten and cause, substantial injury to Crocs.

### EIGHTH CLAIM FOR RELIEF
Passing Off and Federal Unfair Competition – 15 U.S.C. § 1051 *et seq.*

91.     Plaintiffs hereby incorporate each of the preceding paragraphs as if fully set forth herein.

92.     Defendants have displayed, distributed, sold and used merchandise that that infringes the Crocs Trade Dress and the Jibbitz Copyrighted Works.  Defendants' acts are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants' goods, and also misrepresent the nature, characteristics and qualities of Defendants' goods.

93.     Defendants' actions constitute false designations of origin, unfair competition, false advertising, and passing off in violation of Section 43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a).  Such violations were and are willful and deliberate.

94.     Defendants' conduct has caused, and, if not enjoined will continue to cause, irreparable harm to Plaintiffs.  Plaintiffs have no adequate remedy at law.

## NINTH CLAIM FOR RELIEF
Common Law Unfair Competition

95.     Plaintiffs hereby incorporate each of the preceding paragraphs as if fully set forth herein.

96.     Defendants have displayed, distributed, sold and used merchandise that that infringes the Crocs Trade Dress and the Jibbitz Copyrighted Works, thereby taking advantage of the good will and business reputation of Plaintiffs by unfair means.  These activities constitute unfair competition.

97.     Defendants have engaged in unfair competition willfully and with a bad faith intent to injure Plaintiffs.

98.     Plaintiffs have sustained, and will continue to sustain, substantial injuries, loss and damage to its business by reason of the unfair competition of Defendants.

99.     Defendants' unfair competition has caused, and, if not enjoined will continue to cause, irreparable harm to Plaintiffs.  Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for entry of judgment granting:

A.     A preliminary and permanent injunction restraining Defendants, their officers, agents, servants, employees, and attorneys, and those persons acting in concert with them from:

(i)  manufacturing, use, marketing, distribution, sale, offers to sell, and importation of any foam clog footwear that infringes the '858 Patent, the '789 Patent and/or the Crocs Trade Dress;

        (ii)     directly or indirectly infringing Jibbitz's copyright rights in the Jibbitz Copyrighted Works, or any portion thereof, and any and all use of the Jibbitz Copyrighted Works, either alone or in conjunction with other materials;

        (iii)    using the marks CROCOS, CROCOS CLOGS, CROCOS SHOES, and CROCO CHARMS or any other mark that is deceptively similar to the CROCS Mark, in connection with their goods and services and otherwise engaging in unfair competition; and

        (iv)    directly or indirectly infringing and diluting Jibbitz's Lanham Act rights in the Jibbitz Marks and any and all use of the Jibbitz Marks, either alone or in conjunction with other materials and otherwise engaging in unfair competition;

        (v)     unfairly competing with Crocs and Jibbitz in any manner whatsoever.

B.     Award Plaintiffs their actual damages in an amount according to proof;

C.     Declare that Defendant's infringement and other wrongful acts herein alleged be determined deliberate, willful, and in conscious disregard of Plaintiffs' rights pursuant to 15 U.S.C. §§ 1117 and 1125(a), 35 U.S.C. § 284 and/or 18 U.S.C. § 1964(c), and at common law;

D.     Declare that Defendants be required to account to Plaintiffs for any and all gross and net sales, revenues, and profits received or derived by Defendants from the manufacture, marketing, sale, offering for sale, and/or distribution of products or services bearing or using any copy or colorable imitation of the Crocs Trade Dress or the Jibbitz Copyrighted Works and award Plaintiffs Defendants' profits not taken into account in calculating actual damages;

E.     For an order that Defendants be directed to file with this Court and serve on Crocs and Jibbitz within a period of time to be determined by the Court after the service of any injunction order, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction.

F.     For an order that Defendants be required during this proceeding to preserve, surrender and deliver up to Crocs and Jibbitz all devices, clothing, printed matter, advertising, molds, plates, and designs bearing the words, designations, trademarks or symbols related or similar thereto which violate Crocs' and Jibbitz's  respective federal, statutory, state, or common law rights.

G.     For an order that upon the conclusion of this proceeding, Crocs and Jibbitz are authorized by this Court to destroy all devices, clothing, printed matter, advertising, molds, plates, and designs provided by Defendant to Crocs and Jibbitz that this Court finds to violate Crocs' and Jibbitz's respective federal, statutory, state, or common law rights.

H.     For an order that Defendants be required at the conclusion of this proceeding to destroy in their possession any and all remaining devices, clothing, printed matter, advertising, molds, plates, and designs  that this Court finds to violate Crocs' and Jibbitz's respective federal, statutory, state or common law rights.

I.     For an order that the Internet domain name *www.crocosshoes.com* be transferred, pursuant to 15 U.S.C. § 1125(d)(1)(C) to Plaintiff Crocs;

J.     An award of treble or punitive damages, as applicable, against Defendants;

K.     Pre-judgment and post-judgment interest as allowed by law;

L.     An award of reasonable attorney's fees and costs; and,

M.      Such other and further equitable and legal relief as this Court deems just and

proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this 16th day of July, 2007.

s/ Natalie Hanlon-Leh
Natalie Hanlon-Leh
Jared B. Briant
FAEGRE & BENSON LLP
1700 Lincoln Street, Suite 3200
Denver, Colorado 80203
Phone:  (303) 607-3500
Fax:  (303) 607-3600

Attorneys for Plaintiffs CROCS, INC. and
JIBBITZ, LLC

Plaintiff's Address:
6328 Monarch Park Place
Niwot, Colorado 80503

fb.us.2140675.06